## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>NANOSOLUTIONS, LLC and )<br>AQUISS BEVERAGE TECHNOLOGIES, INC. )<br>                            )<br>    Plaintiffs, )<br>                            )<br>v. )<br>                            )<br>RUDY PRAJZA, AQISS CANADA, LTD. )<br>and 2221267 ONTARIO LTD. )<br>                            )<br>    Defendants. )<br>_____ ) | Civil No. 1:10-CV-1741-EGS |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION TO STAY PENDING ARBITRATION

This action involves the fraudulent inducement by the Defendants of the Plaintiffs to enter into an agreement and to agree to specific provisions, including but not limited to an arbitration provision, to which the Plaintiffs would not have agreed but for the fraudulent inducement of the Defendants.

After achieving their goal of executing an agreement, the Defendants immediately and consistently breached numerous of their obligations thereunder, resulting in repeated warnings being issued by the Plaintiffs to the Defendants by telephone and in writing, including a formal notice to cure. Ultimately, the Plaintiffs terminated the agreement in writing and, in such termination letter, set forth their intent to take legal action against the Defendants. In response, the Defendants fabricated an alleged breach by the Plaintiffs (of which the Defendants had never given any notice to the Plaintiffs) in order to initiate an arbitration proceeding.

The Plaintiffs originally brought this action in D.C. Superior Court, and the matter was removed by the Defendants to federal court. The Defendants, meanwhile, have commenced an arbitration proceeding in Canada, in which the Plaintiffs have not participated.

The Defendants have moved to stay the instant proceeding pending the arbitration proceeding. For the reasons set forth below, including that the Defendants fraudulently induced the Plaintiffs to agree to an arbitration provision, this Court must deny the Defendants motion and consider the merits of the case.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff NanoSolutions, LLC ("Nano") is a biotechnology company which has developed a non-pharmaceutical nano-encapsulation delivery system providing for instant delivery of payloads into the bloodstream. Aquiss Beverage Technologies, Inc. ("ABT") is an affiliated manufacturer and marketer of beverages and liquids containing biotechnologies. ABT has developed, among other things, the AQISS brand of vitality beverage which offers faster and more effective delivery electrolytes and cell repair technology though nano-encapsulation. ABT has been successful enough to enter into an agreement (the "Roddick Agreement") which, among other things, permits it to use the likeness of Andy Roddick, one of the top male tennis players in the world (the "Athlete Endorsement"), in the marketing of certain of its products including the AQISS vitality beverage.

Beginning in June 2009, Rudy Prajza began repeatedly to approach ABT requesting that ABT permit him to manufacture, market and sell in Canada the "AQiss" brand of beverages products containing Nano's nanotechnology. Mr. Prajza proposed

2

PDF created with pdfFactory Pro trial version www.pdffactory.com

to conduct these operations through a company to be organized by him and capitalized by "heavy hitters" in the Canadian food and beverage industries. (*See* Hovis Decl., ¶ 3.) ABT was initially reluctant to consider such a relationship, as Mr. Prajza had no experience in operating a manufacturing and marketing company, had no existing business infrastructure, and had no existing distribution system or networks, etc. Additionally, ABT had attempted to incorporate the services of Mr. Prajza into its U.S. operations, and I wanted Mr. Prajza to focus his efforts on creating sales for ABT in the United States as his prior efforts had been a complete failure. (*See* Hovis Decl., ¶ 4.)

Beginning in September 2009, after persistent communications from Mr. Prajza regarding a Canadian licensing arrangement, Nano began to propose certain terms on which Nano would license the rights required to manufacture, market and sell the AQiss beverage products in Canada to a company to be formed by Mr. Prajza. (*See* Hovis Decl., ¶ 5.)

After sending Mr. Prajza a proposed term sheet which he indicated contained terms on which he would agree to proceed with a Canadian licensing arrangement, Nano sent to Mr. Prajza a draft Agreement in Principle dated September 18, 2009, between Nano and Mr. Prajza setting forth the proposed major terms of a licensing transaction.  Among other things, this draft Agreement in Principle provided as follows:

> Governing Law.  This Agreement and the legal relationships among the parties hereto shall be governed by and construed in accordance with the substantive laws of the State of Delaware without giving effect to the principals of conflicts of laws thereof.

(*See* Hovis Decl., ¶ 6 & Ex. A.)  A subsequent draft Agreement in Principle that was sent to Mr. Prajza, dated November 8, 2009, and also between Nano and Mr. Prajza,

PDF created with pdfFactory Pro trial version www.pdffactory.com

included the same "governing law" provision as set forth in paragraph 6 above. (*See* Hovis Decl., ¶ 7.)

During this period and subsequently, Mr. Prajza made certain false representations in order induce Nano (and later, ABT) to enter into a Canadian licensing transaction with a new company to be organized by him and to agree to terms to which the Company would not otherwise agree, including an arbitration provision. (*See* Hovis Decl., ¶ 8.)   Such false representations included, but were not limited to, (i) that Mr. Prajza had contacts and leads in a number of foreign countries (including but not limited to the United Kingdom, Australia, India and Eqypt) who would be excellent candidates to license the Nano's biotechnology and distribute AQiss beverages in such countries, and that Mr. Prajza would make such introductions and promote such licensing and distribution endeavors in the event that the parties executed an agreement acceptable to Mr. Prajza and (ii) that a list of prominent businessmen in the Canadian food and beverage industries were part of, and had invested working capital in, the Canadian entity being formed by Mr. Prajza to implement the licensing transaction.  Other false representations included (but were not limited to) representations related to pricing and royalty provisions which are set forth in some detail in the Complaint. (*See* Hovis Decl., ¶ 9.)

Based on the fraudulent inducements of the Defendants in this action and at the specific request and insistence of the Defendants, Nano and ABT ultimately signed an Agreement in Principle in June 2010 (the "Agreement") which contained the following provision:

> <u>Governing Law</u>.  This Agreement and the legal relationships among
> the parties hereto shall be governed by and construed in

PDF created with pdfFactory Pro trial version www.pdffactory.com

> accordance with the substantive laws of the Province of Ontario,
> Canada without giving effect to the principals of conflicts of laws
> thereof. Conflicts between parties shall be resolved through the
> Arbitration Act, Ontario, held in the City of Toronto.

(*See* Hovis Decl., ¶ 10.)  Nano and ABT would not have agreed to this arbitration provision but for the fraudulent misrepresentations of the Defendants in this case. (*See* Hovis Decl., ¶ 11.)  Nano and ABT have, and had prior to and at the time that the Agreement was signed with the Defendants, a policy against entering into agreements containing mandatory arbitration provisions.  This is based on the companies' view, which I share, that arbitration results in a "split the baby" approach that rewards the wrongdoer and penalizes the aggrieved party.  Additionally, as arbitrators are not judges and often are not even lawyers, they are not capable or qualified to determine issues of law. (*See* Hovis Decl., ¶ 12.)

Moreover, in negotiating the language of the arbitration provision, the Plaintiffs never intended that "all conflicts" related to the parties to the Agreement in all circumstances be subject to arbitration.  The second sentence of the provision was intended solely as a refinement of the first sentence, not an expansion.  The entire paragraph was intended to relate solely to disputes between Nano/ABT and the Defendants, and not to any disputes related to the Defendants obligations to comply with the terms and conditions of the Roddick Agreement (defined below). (*See* Hovis Decl., ¶ 13.)

The Agreement entailed not only the grant and license of certain rights from the Nano and ABT to the corporate Defendants, but also entailed the sublicense to AQiss Canada, Ltd. ("AQiss Canada") of certain of Plaintiff's rights under an agreement between ABT and Andy R., Inc. (the "Roddick Agreement") to permit AQiss Canada to

5

PDF created with pdfFactory Pro trial version www.pdffactory.com

use the athlete endorsement of Andy Roddick, one of the top male tennis players in the world (the "Athlete"). (*See* Hovis Decl., ¶ 14.)  The Roddick Agreement grants to ABT the worldwide right to use, on a pre-approved basis, the Athlete's name, likeness, approved photograph, signature, and biography (the "Athlete Endorsement") to promote certain ABT beverage and other products (excluding pharmaceutical products) approved in advance by the parties. (*See* Hovis Decl., ¶ 15.)

ABT's ability to grant a sublicense to AQiss Canada derives solely by virtue of ABT's rights under the Roddick Agreement.  ABT is not permitted to sublicense its rights under the Roddick Agreement to any party except with the prior approval of Andy R., Inc.  (See Hovis Decl. ¶ 16.)  However, Mr. Prajza felt that it was imperative for the success of his business plan that AQiss Canada be able to use the Athlete Endorsement.  Therefore, at the request of AQiss Canada, and as a result of ABT's efforts on behalf of Defendant AQiss Canada and in reliance on the fraudulent misrepresentations of the Defendants, AQiss Canada is the only pre-approved sublicensee under the Roddick Agreement of ABT's rights to use the Athlete Endorsement. (*See* Hovis Decl., ¶ 17.)

None of the Defendants in this action is a party to the Roddick Agreement. (*See* Hovis Decl., ¶ 17.)

Under the Roddick Agreement, the pre-approval of AQiss Canada as a sublicensee of the right to use the Athlete Endorsement in Canada was <u>subject to and contingent upon</u> AQiss Canada's agreement to be bound by all of the terms and conditions of the Roddick Agreement. (*See* Hovis Decl., ¶ 18.)

6

PDF created with pdfFactory Pro trial version www.pdffactory.com

The Roddick Agreement contains a paragraph providing that the Roddick Agreement shall be governed by the laws of the State of Maryland and that arbitration is optional and may be invoked solely in the event of the mutual agreement of the parties It states that "Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity of it, *may, upon the mutual agreement of the parties hereto*, be finally settled by arbitration". (*See* Hovis Decl., ¶ 20.) Therefore, consistent with ABT's obligations to require that the sublicense to AQiss Canada be conditioned upon AQiss Canada's agreement to be bound by all of the terms and conditions of the Roddick Agreement, paragraph 2(a) of the Agreement provides that AQiss Canada acknowledges that "by executing this Agreement, *AQiss [Canada] agrees to be bound by all of the terms and conditions of the Roddick Agreement* and to take all necessary and reasonable actions to ensure ABT's compliance therewith pertaining to the marketing and selling of the Finished Products in [Canada]" and acknowledges that the sublicense of rights under the Agreement is *conditioned upon* such commitment by AQiss Canada. (*See* Hovis Decl., ¶ 21.)

Immediately subsequently to entering into the Agreement, it became apparent that the Defendants intended to violate both the spirit and the letter of the Agreement. (*See* Hovis Decl., ¶ 22.)  AQiss Canada:

- resisted making a written request for approval to use specific photographs on its website as part of the Athlete Endorsement, as specifically required by the Roddick Agreement, and only complied after repeated warnings by ABT that AQiss Canada's actions could jeopardize both ABT's and AQiss Canada's rights to use the Athlete Endorsement. (*See* Hovis Decl., ¶ 23.)

- did not include on its website Nano's nanotechnology logo as required by the Agreement, instead using a disturbingly similar mark with disturbingly similar language.  This action convinced ABT that Mr. Prajza and AQiss Canada were intending to create their own logo to represent Nano's biotechnology.

PDF created with pdfFactory Pro trial version www.pdffactory.com

Further, when confronted about this issue, AQiss Canada first put the Nano logo on the very bottom of website pages other than the front page, in an attempt to obscure the logo.  It was only after Nano's repeated insistence that AQiss Canada placed the Nano logo prominently on the front page as required by the Agreement. (*See* Hovis Decl., ¶ 24.)

- did not include on its website any reference to the fact that its rights extend only to the territory of Canada and that sales may be made from the website only for shipment to destinations in Canada.  Despite repeated requests from ABT, AQiss Canada never included such an indication on its website, in violation of the rights of ABT and Nano. (*See* Hovis Decl., ¶ 25.)

- refused to submit monthly reports required by section 1(c) of the Agreement until Nano issued a Notice to Cure on July 18, 2010, stating that Nano would terminate the Agreement in the event that the report was not submitted within the five business day cure period. (*See* Hovis Decl., ¶ 27.)  When AQiss Canada finally did submit a monthly report, the report (and subsequent reports) revealed the AQiss Canada's intention not to comply with the royalty provisions of the Roddick Agreement. (*See* Hovis Decl., ¶ 28.)

- refused to pay the signing bonus payable under the Roddick Agreement, or even any part thereof, despite agreeing to be subject to all of the terms and conditions of the Roddick Agreement. (*See* Hovis Decl., ¶ 29.)

- failed to provide to Nano in August 2010, as required by paragraph 3 of the Agreement, a website with e-commerce capabilities pertaining to Nano's biotechnology.  To Nano and ABT, this was an extremely important, bargained for consideration for entering into the Agreement.

Shortly before the AQiss Canada website went "live", Mr. Prajza sent an email indicating that the price that AQiss Canada would charge for its beverage concentrates was far in excess of the price that he represented to ABT for months previously.  This was the first indication that the Defendants had intentionally and fraudulently misled Nano and ABT to induce them to include agreement terms to which Nano and ABT would not otherwise have agreed. (*See* Hovis Decl., ¶ 26.)

The foregoing is not a complete list of the Defendants' breaches of the Agreement. (*See* Hovis Decl., ¶ 31.)

8

After numerous warnings to the Defendants of their various and repeated breaches of the Agreement (including but not limited to AQiss Canada's numerous breaches of its agreement to be subject to all of the terms and conditions of the Roddick Agreement), which warnings were communicated by Nano and ABT to the Defendants in telephone calls, emails, and the written notice to cure, ABT, by letter dated August 19, 2010, terminated the sublicense to AQiss Canada of ABT's rights to use the Athlete Endorsement. (*See* Hovis Decl., ¶ 32.)  AQiss Canada has ignored this termination and continues, on an unauthorized and unlawful basis, to use the Athlete Endorsement. (*See* Hovis Decl., ¶ 33.)

Subsequently, after additional written and verbal warnings by the Plaintiffs and as a result of AQiss Canada's continuing to be in breach of a number of the provisions of the Agreement, the Plaintiffs terminated the entire Agreement by letter dated September 13, 2010. (*See* Hovis Decl., ¶ 12 and Ex. B.)

The Defendants also have ignored the termination of the Agreement, and continue to market and sell products in an unlawful and unauthorized manner using ABT and Nano's trade names, trade dress, trade marks, and other intellectual property and including Nano's nanotechnology, exposing Nano and ABT to great harm, including to the Athlete Endorsement. (*See* Hovis Decl., ¶ 35.)

Subsequent to its receipt of such final termination letter (which also informed the Defendants that the Plaintiffs would seek legal redress), AQiss Canada fabricated a "breach" by the Plaintiffs of the Agreement in order to invoke the arbitration provision of the terminated agreement. **<u>The claim of a breach is so baseless that AQiss Canada</u>**

PDF created with pdfFactory Pro trial version www.pdffactory.com

**has never communicated any demand, warning, or notification of the alleged breach to the Plaintiffs prior to seeking arbitration.** (*See* Hovis Decl., ¶ 36.)

The current dispute between the Plaintiffs and the Defendants have consequences far greater than the territory of Canada.  ABT's rights under the Roddick Agreement are worldwide and encompass all non-pharmaceutical beverage, sublingual, and topical products agreed to by the parties, not just the one type of beverage that was (and is currently being unlawfully) distributed by AQiss Canada.  The Defendants actions, as well as the outcome of a Canadian arbitration, may jeopardize ABT's *worldwide* rights to use the Athlete Endorsement and rights to use the Athlete Endorsement *for many other products*. (*See* Hovis Decl., ¶ 37.)

Nano and ABT intend to amend their Complaint to encompass additional claims against Defendant Rudy Prajza that are not subject to the Agreement.  Such claims include, but are not limited to, those based on (i) Defendant Prajza's receipt of payments for services as Director of Marketing of ABT during a period in which he was not responsible for the generation of one revenue dollar and during which, in fact, ABT's then-existing distribution of beverages was brought to a complete halt, (ii) Defendant Prajza's inducement of ABT to procure an H-1 visa for his services as President of ABT when, in fact, Defendant Prajza never intended to, and never did, perform the responsibilities of President, and (iii) Defendant Prajza's gross negligence and intentional malfeasance in his dealings with consultants and other relationships of Nano and ABT, each of which of the foregoing damaged Nano and ABT. (*See* Hovis Decl., ¶ 38.)

PDF created with pdfFactory Pro trial version www.pdffactory.com

**ARGUMENT**

**I.      Jurisdiction Must Be Retained by the Court in the Case of Fraud in the Inducement of the Arbitration Provision**

Even assuming that this matter is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, [1970] 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted at 9 U.S.C. § 201 (the "New York Convention") as implemented in the United States through Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et. seq. (the "FAA"), no grounds exist to stay this matter, as the Plaintiffs were fraudulently induced to enter into an arbitration provision with the Defendants.

Section 203 of the FAA provides that "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

Sections 2 and 3 of the FAA are incorporated into Chapter 2 of the FAA pursuant to 9 U.S.C. § 208.  Section 2 of the FAA provides that "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2 (emphasis added).

Section 3 of the FAA provides that "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

11

PDF created with pdfFactory Pro trial version www.pdffactory.com

agreement in writing for such arbitration, the court in which such suit is pending, <u>upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement</u>, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3 (emphasis added).

 The Supreme Court has repeatedly distinguished between cases of fraud in the inducement of an entire contract, in which a stay of a case in civil court pending arbitration is appropriate, and cases of fraud in the inducement of the arbitration provision itself, in which a U.S. court should not grant such a stay.

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the "making" of the agreement to arbitrate – ***the federal court may proceed to adjudicate it***.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967).

> [T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.  To immunize an arbitration agreement from judicial challenge on the grounds of fraud in the inducement would be to elevate it over other forms of contract …

*Prima Paint Corp.*, 388 U.S. at 404 n. 12.

> A recurring question under §2 [of the FAA] is who should decide whether "grounds … exist at law or in equity" to invalidate an arbitration agreement.  In [Prima Paint], which originated in federal court, this Court held that attacks on an entire contract's validity, ***as distinct from attacks on the arbitration clause alone***, are within the arbitrator's ken.

*Preston v. Ferrer*, 552 U.S. 346 (2008) (emphasis added); see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448 (2006)  ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to

PDF created with pdfFactory Pro trial version www.pdffactory.com

the validity of the contract as a whole, ***and not specifically to the arbitration clause,*** must go to the arbitrator") (emphasis added).

In the instant case, the Plaintiff's agreement to the Agreement's arbitration provision itself was fraudulently induced.  The Plaintiffs have, and had at the time that the Agreement was signed with the Defendants, a policy against entering into agreements containing arbitration provisions.  (*See* Hovis Decl., ¶ 12.)  It is the Plaintiffs' view that arbitration results in a "split the baby" approach that rewards the wrongdoer and penalizes the aggrieved party. (*See* Hovis Decl., ¶ 12.)  Additionally, Plaintiffs have a concern that arbitrators are not judges and often are not even lawyers and are not capable or qualified to determine issues of law. (*See* Hovis Decl., ¶ 12.) (This issue was raised in the dissent of Justice Black, who was joined by Justices Douglas and Stewart in Prima Paint Corp., 388 U.S. at 407 "The Court holds, what is to me fantastic, that the legal issue of a contract's voidness because of fraud is to be decided by persons designated to arbitrate factual controversies arising out of a valid contract between the parties. And the arbitrators who the Court holds are to adjudicate the legal validity of the contract need not even be lawyers, and in all probability will be nonlawyers, wholly unqualified to decide legal issues, and, even if qualified to apply the law, not bound to do so.")

The Plaintiffs provided two versions of the Agreement which contained a U.S. choice of law provision and which did not contain an arbitration provision.  (*See* Hovis. Decl ¶¶ 6-7 & Ex. A.)  The Plaintiffs would not have agreed to an arbitration provision but for the fraudulent misrepresentations of Rudy Prajza.  (*See* Hovis Decl. ¶ 11.)  In their Complaint, the Plaintiffs assert that the Defendants made certain false

PDF created with pdfFactory Pro trial version www.pdffactory.com

representations "[i]n order induce the Company (i) to enter into the Agreement in Principle with a new company with a lack of corporate capability and infrastructure **and (ii) to agree to terms to which the Company would not otherwise agree**" (emphasis added), including an arbitration provision.  (*See* Compl. p. 3).  Such false representations included, but were not limited to, (i) that Mr. Prajza had contacts and leads in a number of foreign countries (including but not limited to the United Kingdom, Australia, India and Eqypt) who would be excellent candidates to license the Plaintiff's technology and distribute AQiss beverages in such countries, and that Mr. Prajza would make such introductions and promote such licensing and distribution endeavors in the event that the parties executed an agreement acceptable to Mr. Prajza (*see* Compl. ¶ 15) and (ii) that a list of prominent businessmen were part of the Defendant companies (see Compl. ¶ 18).  Such false representations of material fact were made intentionally and knowingly by the Defendants with the intent to mislead the Plaintiffs and were relied upon by the Plaintiffs to their detriment (*see* Compl. ¶¶ 15-42.)

The Plaintiffs did not purport to enumerate in the Complaint each such term that was resisted by the Plaintiffs and was ultimately agreed to as a result of the fraudulent representations and inducement of the Defendants.

Based on the Defendant's fraudulent inducement of the Agreement's arbitration provision itself, this Court should adjudicate Plaintiff's claims.  See, Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483, 491 (6th Cir. 2001) ("[I]ssues relating to the making of an arbitration agreement, separate from the underlying contract, are to be determined by the court, not the arbitrator. *Prima Paint*, 388 U.S. at 404. "So, for example, a challenge based on fraud in the inducement of the whole contract (including the

PDF created with pdfFactory Pro trial version www.pdffactory.com

arbitration clause) is for the arbitrator, while a challenge based on the lack of mutuality of the arbitration clause would be for the court." *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir. 1985) (citations omitted). "If the fraud relates to the arbitration clause itself, the court should adjudicate the fraud claim." *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 933 (6th Cir. 1998) (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 539 (5th Cir.1992))").

## II.   The Agreement's Arbitration Provision Does Not Govern All of the Parties' Disputes

### A.   Defendant AQiss Has Waived Its Right to Invoke the Arbitration Provision of the Agreement With Respect to Certain Disputes

The Agreement entailed not only the grant and license of certain rights from the Plaintiffs to the corporate Defendants, but also entailed the sublicense to Defendant AQiss Canada, Ltd. ("AQiss") of certain of Plaintiff's rights under an agreement between Plaintiff Aquiss Beverage Technologies, Inc. ("ABT") and Andy R., Inc. (the "Roddick Agreement") to permit AQiss to use the athlete endorsement of Andy Roddick, one of the top male tennis players in the world (the "Athlete").  (*See* Compl. ¶¶ 28-29.)  The Roddick Agreement grants to ABT the worldwide right to use, on a pre-approved basis, the Athlete's name, likeness, approved photograph, signature, and biography (the "Athlete Endorsement") to promote certain ABT beverage products (excluding pharmaceutical products) approved in advance by the parties. (*See* Compl. ¶ 28.)  The Roddick Agreement is an agreement between two U.S. parties and is governed by U.S. law.

ABT's ability to grant a sublicense to AQiss Canada, Ltd. ("AQiss") derives solely by virtue of its rights under the Roddick Agreement.  As a result of ABT's efforts on

PDF created with pdfFactory Pro trial version www.pdffactory.com

behalf of Defendant AQiss and in reliance on the fraudulent misrepresentations of the Defendants, AQiss is the only pre-approved sublicensee under the Roddick Agreement of ABT's rights to use the Athlete Endorsement (see Compl. ¶ 30.)  However, such pre-approval as a sublicensee was contingent on AQiss' agreement to be bound by all of the terms and conditions of the Roddick Agreement.  (*See* Hovis Decl. ¶ 19.)

The Roddick Agreement contains a provision providing that the Roddick Agreement shall be governed by the laws of the State of Maryland and that arbitration is optional and may be invoked solely in the event of the mutual agreement of the parties ("Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity of it, ***may, upon the mutual agreement of the parties hereto***, be finally settled by arbitration") (*See* Hovis Decl. ¶ 20.).

None of the Defendants are parties to the Roddick Agreement.  (*See* Hovis Decl. ¶ 18.). However, in paragraph 2(a) of the Agreement, AQiss Canada Ltd. ("AQiss") acknowledges that "by executing this Agreement, ***AQiss agrees to be bound by all of the terms and conditions of the Roddick Agreement*** and to take all necessary and reasonable actions to ensure ABT's compliance therewith pertaining to the marketing and selling of the Finished Products in [Canada]" and acknowledges that the sublicense of rights under the Agreement **is *conditioned upon*** such Agreement by AQiss. (*See* Compl. ¶ 34 & Notice of Removal [Dkt. 1]. Ex. D (emphasis added).)  This agreement to be bound by the terms and conditions of the Roddick Agreement was not qualified in any way. (*See* Notice of Removal [Dkt. 1]. Ex. D.)

Even before the Plaintiffs terminated the entire Agreement, they terminated AQiss' sublicense under the Agreement to use the Athlete Endorsement (which AQiss

PDF created with pdfFactory Pro trial version www.pdffactory.com

continues unlawfully to use).  (*See* Hovis Decl. ¶ 32.)  Therefore, with respect to the issues pertaining to ABT's sublicense of rights to use the Athlete Endorsement, AQiss has waived its right to rely on the arbitration provision of the Agreement and is estopped from relying on such provision in the Agreement.

### B.    The Agreement's Arbitration Provision Does Not Encompass Plaintiff's Claims

Contrary to the statement in the Defendant's Memorandum in Opposition, the Agreement does not state that "any" conflicts between the parties to the Agreement are subject to the arbitration clause.  Section 12(d) of the Agreement states, in full, that:

> *This Agreement and the legal relationships among the parties hereto* shall be governed by and construed in accordance with the substantive laws of the Province of Ontario, Canada, without giving effect to the principals of conflicts of laws thereto.  Conflicts between the parties shall be resolved through the Arbitration Act, Ontario, held in the City of Toronto.

(*See* Notice of Removal [Dkt. 1]. Ex. D (emphasis added).)  The Plaintiffs intended that the second sentence was solely a further refinement of the first paragraph, not a further expansion thereof. (*See* Hovis Decl. ¶ 13.)  Therefore, the Plaintiffs never intended that "all conflicts" related to the parties to the Agreement in all circumstances be subject to arbitration in Canada. (*See* Hovis Decl. ¶ 13.)  Further, as set forth above, consistent with its own requirement in the Roddick Agreement, ABT ensured that the Agreement included AQiss' agreement to be bound by all of the terms and conditions of the Roddick Agreement.

The current dispute between the Plaintiffs and the Defendants have consequences far greater than the territory of Canada.  ABT's rights under the Roddick Agreement are worldwide and encompass all non-pharmaceutical beverage products

PDF created with pdfFactory Pro trial version www.pdffactory.com

agreed to by the parties, not just the one type of beverage that was distributed by AQiss.  The Defendants actions, as well as the outcome of a Canadian arbitration, may jeopardize ABT's **worldwide** rights to use the Athlete Endorsement and rights to use the Athlete Endorsement **for many other products**.

Given the waiver by AQiss of its rights to rely on the Agreement's arbitration provision with respect to certain of the issues in dispute, as well as the far-reaching potential consequences related to a relationship between two U.S. parties, the Court should not stay this proceeding pending the Canadian arbitration.

III.   **Plaintiffs Intend to Move to File an Amended Complaint Including Additional Claims Against Defendant Prajza Which are Not Subject to the Agreement**

The Plaintiffs intend to amend their Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a) to encompass additional claims against Defendant Rudy Prajza that are not subject to the Agreement.  Such claims include, but are not limited to, those based on (i) Defendant Prajza's receipt of payments for services as Director of Marketing of ABT during a period in which he was not responsible for the generation of even one revenue dollar and during which, in fact, ABT's then-existing distribution of beverages was brought to a complete halt under his direction and supervision, (ii) Defendant Prajza's inducement of ABT to procure an H-1 visa for his services as President of ABT when, in fact, Defendant Prajza never intended to, and never did, perform the responsibilities of President, and (iii) Defendant Prajza's gross negligence and intentional malfeasance in his dealings with consultants and other relationships of the Plaintiffs, each of which of the foregoing damaged the Plaintiffs. (*See* Hovis Decl. ¶ 38.)

PDF created with pdfFactory Pro trial version www.pdffactory.com

The facts upon which the additional claims against Defendant Prajza are based are closely intertwined with the facts pled in the Complaint, as Defendant Prajza is the President of both of the corporate Defendants and operates their businesses out of his house (the addresses of both such corporate Defendants are Defendant Prajza's home address), and certain of the actions of Defendant Prajza that form the basis of the additional claims occurred during the same period of time as the actions of Defendant Prajza that form the basis of the claims set forth in the Complaint.  However, such claims are not subject to the Agreement nor, even arguably, to the arbitration provision thereof.

**CONCLUSION**

Based on the foregoing, the Plaintiffs respectfully request that this Court deny Defendants' Motion to Stay Pending Arbitration.

Dated:  November 8, 2010                    Respectfully Submitted,


                                            _/s/_____
                                            Anne P. Hovis (D.C. Bar #412531)
                                            General Counsel
                                            NanoSolutions, LLC
                                            1101 30th Street, NW
                                            Suite 500
                                            Washington, DC 20007
                                            Phone:  (410) 952-0008
                                            Fax:  (240) 465-2458
                                            Jbhphlo@aol.com
                                            *Counsel for NanoSolutions, LLC and*
                                            *Aquiss Beverage Technologies, Inc.*

19

PDF created with pdfFactory Pro trial version www.pdffactory.com