# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
NANOSOLUTIONS, LLC and                          )
AQUISS BEVERAGE TECHNOLOGIES, INC.  )
                                                                 )
     Plaintiffs,                                      )
                                                                 )
v.                                                              )     Civil No. 1:10-CV-1741-EGS
                                                                 )
RUDY PRAJZA, AQISS CANADA, LTD., and  )
2221267 ONTARIO LTD.                              )
                                                                 )
     Defendants.                                  )
_____ )

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MEMORANDUM IN OPPOSITION TO <u>DEFENDANTS' RENEWED MOTION TO STAY PENDING ARBITRATION</u>

     While it is somewhat difficult to discern the Defendants' argument in opposition to the Plaintiff's Motion for Leave to File Amended Complaint, it seems to be this:  that the granting of leave to file the Amended Complaint may diminish the Defendants' chances of prevailing on its Motion for a Stay Pending Arbitration.  This is not a valid basis on which to deny the Plaintiffs' motion.

     Moreover, the Defendants renew their Motion to Stay Pending Arbitration (even though the arbitration conducted in Canada has been completed), claiming that every encounter that ever occurred at any point in time between any Plaintiff and any Defendant are all exclusively subject to the jurisdiction of a Canadian arbitrator, even though the arbitrator himself in such now-concluded Canadian arbitration specifically decided that "the bulk of" the damages sought by the Defendants in the Canadian arbitration "all arose prior to the date of the Agreement [in Principle] and **in my view the claims for those damages are not arbitrable under the Agreement**." See Cherniak

Decision ¶ 15 (emphasis added) [Dkt.10-1].  As set forth below, the Plaintiffs cannot be deemed to have waived their pre-existing rights to judicial process based solely on the existence of the arbitration provision in the Agreement in Principle.

Accordingly, the Court should grant the Plaintiffs' Motion for Leave to Amend Complaint.  Further, this Court, and not the Canadian arbitrator, has the sole legal authority and mandate to decide all of the issues raised in the Complaint and the Amended Complaint and, therefore, this Court should deny the Defendants' Motion to Stay.

## I.    Motion for Leave to Amend Complaint

"[Federal Rule of Civil Procedure] 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.  See *generally* 3 Moore, Federal Practice (2d ed. 1948), 115.08, 15.10.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The types of grounds on which a motion to amend may be denied are limited, and include grounds such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and futility of the amendment.  *Id.*  A court's refusal to grant a motion to amend may be an abuse of discretion where there is no demonstrable showing of prejudice. *Id.*; *United Steelworkers of America v. Mesker Bros. Industries, Inc.,* 457 F.2d 91 (8th Cir. 1971).

In the instant case, none of the grounds set forth above to deny a motion to amend are present.  Moreover, in the instant case, the Defendants have not yet even

filed an initial answer to the original Complaint.  This is not a case in which, for example, discovery has been completed and the case is well into the trial phase, so that leave to amend the complaint could result in great prejudice to the Defendants.

Further, some of the claims that the Plaintiffs seek to include in an Amended Complaint did not exist at the time the original Complaint was filed and some existed but had not yet become known to the Plaintiffs at that time.

The Defendants stated objections to the Plaintiffs' Motion for Leave to Amend Complaint are that "ABT's motion seeks to expand through litigation a complaint that is properly subject to a stay" and "ABT's act of seeking leave to file its amended complaint is, therefore, a further act in breach of its agreement to arbitrate the claim brought in the original complaint".  The problem with these arguments is that they are based on determinations that have yet to be made by this Court.

According to the District of Columbia Court of Appeals,

"[t]he presumption in favor of arbitration attaches only after the trial court has determined that a valid agreement to arbitrate exists.  Put another way, "the scales tip in favor of arbitration when we construe an arbitration clause, but only after we find, as an initial matter, than an enforceable arbitration clause exists."  Masurovsky [v. Green, 687 A.2d 198, 205 (D.C. 1996)] (quoting Adamovic v. METME Corp., 961 F.2d 652, 654 (7th Cir. 1992).  Thus, the presumption applies only to the interpretation or construction of an agreement containing an arbitration clause, not to the preliminary determination of the existence and validity of an agreement to arbitrate.  Id. at 200."

*George Washington University v. Scott*, 711 A.2d 1257,1261 (D.C. 1998).

The Plaintiffs have provided ample support for their contention that the Defendants' Motion to Stay should be denied, including*, inter alia*,  judicial authority that jurisdiction must be retained by this Court; that the Plaintiffs were fraudulently induced to enter into the arbitration provision; that there is no longer any reason for a stay based

on the completion of the Canadian arbitration proceeding; that the arbitration provision contained in the Agreement in Principle dated June 24, 2010 between all of the parties to this action (the "Agreement in Principle") does not encompass even the claims in the Plaintiff's initial Complaint; that Defendant Aqiss Canada, Ltd. ("ACL") is subject to the voluntary arbitration provisions of the Roddick Agreement to which it agreed to be subject in the Agreement in Principle; that Defendant ACL is therefore estopped from invoking the arbitration provision of the Agreement in Principle; that the Motion to Stay should be denied with respect to Defendant 2221267 Ontario Ltd. ("Ontario"), as the Defendants represented in the Agreement in Principle that Ontario "shall assign all of its rights and obligations [under the Agreement in Principle] to [ACL]", and therefore, Ontario has no right to arbitrate under the Agreement in Principle; that the Motion to Stay should be denied with respect to Defendant Rudy Prajza, as he was never a party to the Canadian arbitration proceeding.

The equities of the case also weigh in favor of permitting the Plaintiffs to amend their Complaint.  The Defendants actions have jeopardized rights of the Plaintiffs with respect to a wide array of products on a worldwide basis, whereas the Defendants (the two corporations of which have just recently been incorporated) are claiming injury to their fledgling on-line sales effort with respect to one product (which is only unique as a result of the inclusion of the Plaintiffs' science).

Defendants main concern is clearly "avoid[ing] the costs of litigation" pertaining to claims for damages caused by their wrongful actions.  This is not a sufficient cause for denying the Plaintiffs' Motion for Leave to Amend Complaint.

4

## II.     Defendants' Motion to Stay

The Defendants make the argument that, in the event the Motion for Leave to Amend Complaint is granted, the entire proceedings should be stayed based on the arbitration provision contained in the Agreement in Principle.  Incredibly, the Defendants want the Court to remove all of the Plaintiffs remedies with respect to Defendant Rudy Prajza (regardless of when, in what country, and under what agreements or circumstances they arise) as the result of an arbitration provision (a) that was fraudulently induced by Prajza and (b) that the Plaintiffs did not intend to govern such pre-existing rights.

In *AT&T Tech., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643 (1986), the Supreme Court held that it is the Court's duty to interpret agreements in the first instance and to determine whether the parties intended to arbitrate the issues in dispute.  The Court held that the Court of Appeals had "erred in ordering the parties to arbitrate the arbitrability question."  *Id.* at 651.  The mere fact that an arbitration provision exists is not sufficient justification for a Court to refer a matter to arbitration without an express determination of whether the parties intended to arbitrate.

> The principles necessary to decide this case are not new.  They were set out by this Court over 25 years ago in a series of cases known as the Steelworkers Trilogy [citations omitted]…We see no reason either to question their continuing validity or to eviscerate their meaning by creating an exception to their general applicability.  The first principle gleaned from the Trilogy is that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration of any dispute which he has not agreed to so submit." [Citations omitted].  This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."

Id. at 648-49.

"Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." 9 U.S.C. § 2; *see Southland Corp.*, 465 U.S. at 465 U. S. 16, n. 11; *The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 407 U.S. 15 (1972)." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985).

There is evidence proffered to support the Defendants' claims that, by entering into the Agreement in Principle, the Plaintiffs intended to submit all disputes related to any relationship between any of the parties in the past to mandatory arbitration.  As set forth in prior pleadings, the Plaintiffs do not believe that the arbitration provision is applicable even with respect to disputes related to the Agreement in Principle, for the many reasons set forth in such pleadings.

Contrary to statements in the Defendants' Memorandum in Opposition, the Plaintiffs have set forth in pleadings that they did not intend for the arbitration provision to encompass "all conflicts" of whatever kind and from whatever time period between any of the parties thereto.  Two of the Defendants in this action did not even exist until shortly before this action was commenced, and the Plaintiffs have no prior history with such entities.  The claims of the Plaintiffs against Defendant Prajza, individually, relate to a completely different relationship, conducted at a different time and in a different country; they do not involve a license of the Plaintiffs' intellectual property or a sublicense of the Plaintiffs' rights under an endorsement agreement; and they involve fraud and bad faith on the part of Defendant Prajza.

6

Courts generally have not applied an arbitration provision from a subsequently entered-into contract to a pre-existing dispute "where the parties had prior written contracts governing their relationship." *Watson Wyatt Co. v. SBC Holdings, Inc.,* No. 66-2062 (6th Cir. January 28, 2008).

In *George Washington University, supra,* the Court of Appeals for the District of Columbia Court of Appeals upheld the right of insurance policy holders to sue George Washington University for medical malpractice occurring in December 1994, despite the addition of an arbitration provision in the renewed policy that took effect in January 1995. The Court held that the arbitration provision did not apply retroactively, even though the claim for damages was not brought until 1995. Id. "<u>At the very least, before the arbitration clause could have any retroactive effect on rights that have already arisen and before the insureds could be held to have foregone rights previously accrued, the language of the new provision in the contract should so state. Courts "are not inclined to find that a party has waived its right to ordinary judicial process without an express and specific agreement</u>." *Case Int'l Co. v. T.L. James & Co.*, 907 F.2d 65., 67 (8th Cir. 1990)." George Washington University, 711 A.2d at 1261 (emphasis added).

In *Security Watch Inc. v. Sentinel Systems, Inc.,* 176 F.3d 369 (6th Cir. 1999), the Sixth Circuit held that disputes arising under pre-1994 contracts were not governed by an arbitration clause in a 1994 contract. The Court relied on the fact that the 1994 agreement had a specified term and that the arbitration provision "did not purport to reach disputes related to pre-1994 agreement products." *Id.* Moreover, the Court stated that "Although it is true that Security had a number of ongoing reporting and training obligations under the agreements, the contracts here were essentially forward-

looking." *Id.* See also, *Choice Sec. Sys., Inc. v. AT&T Corp.*, No 97-1774, 1998 WL 153254 (1st Cir., Feb. 25, 1998); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927-28 (2d Cir. 1990); *Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 345 (8th Cir. 1990); *Hendrick v. Brown & Root, Inc.,* 50 F. Supp. 2d 527 (E.D. Va. 1999); *Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.*, 745 So. 2d 271 (Ala. 1999); *George Washington University,* 711 A.2d 1257; *In re Hops Antitrust Litig.,* 655 F. Supp. 169, 172-73 (E.D. Mo 1987), *appeal dismissed*, 832 F.2d 470 (8th Cir. 1987).

The Sixth Circuit noted in *Security Watch*, 176 F.3d 369, that the lower court ignored "the universally understood purpose of this boilerplate [merger] clause in applying the arbitration provision of the 1994 contract to earlier disputes.[1]

> The First Circuit has recently addressed the same arguments relating to a similar contract involving AT&T security systems.  In an unpublished disposition that court held that an identical "run-of-the-mill integration clause" did not cause a later agreement to supersede prior agreements.  See *Choice Security Sys., Inc. v. AT&T Corp.*, No 97-1774, 1998 WL 153254, at *1 (1st Cir. 1998) (unpublished).  Although the agreements governed the ongoing relationship between the parties, the terms could "be viewed as imposing current responsibilities."  *Id.*  <u>Thus, as no other provision of the later agreement even "remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements,"</u> the court held that an arbitration provision that first appeared in 1994 did not apply to disputes relating to pre-1994 products.  *Id.*

*Id.* (emphasis added).

The Supreme Court recently reinforced an insurance policy holder's right to litigate its claims rather than having them arbitrated based on arbitration provisions in

---

[1] "Merger clauses are routinely incorporated into agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated.  A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.  See 2 FARNSWORTH ON CONTRACTS § 7.3 at 215-225."  *Id.*

contracts other than the insurance policies.  In *American Home Assurance Co. v. UMG Recordings, Inc.,* No. 10-428, 2010 U.S. LEXIS 8476 (Nov. 1, 2010), the Supreme Court denied American Home's petition for writ of certiorari, leaving in place the Ninth Circuit's decision to allow UMG to pursue in court bad faith and breach of contract claims against American Home where the insurance policy contained no arbitration provision but separate Payment Agreements between the parties contained an arbitration provision applicable to any "unresolved dispute arising out of this Agreement".  *UMG Recordings, Inc. v. American Home Assurance Co.*, 378 Fed. Appx. 776, 767 (9th Cir. 2010).[2]

Further, the Canadian arbitrator was <u>very clear</u> in his "Reason for Decision" that he believes that "the bulk of" the claims brought by the Claimant/Defendants in the arbitration "ARE NOT ARBITRABLE UNDER THE AGREEMENT."  *See* Cherniak Decision  ¶ 15 [Dkt.10-1] ("[I]t appears from the evidence before me that the bulk of these claims [for damages sought by Claimants/Defendants] are personal to Mr. Prajza

---

[2]    The Defendants attempt to demonstrate that "a later in time agreement to arbitrate disputes between parties may apply even to disputes that arise from a separate contract between the same parties that did not contain an arbitration claim".  However, the cases relied upon by the Defendants in their Memorandum in Opposition are inapposite here.

The plaintiffs *in Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), were cable service subscribers whose original service agreements did not include arbitration provisions.  However, the cable service provider later adopted arbitration agreements which it added to the terms and conditions applicable to all subscribers.  Therefore, the agreements and relationships between the service provider and the service subscriber were essentially the same before and after the inclusion of the arbitration agreement, except for the arbitration agreement itself.  (Moreover, although the Court held that the arbitration agreement did have retroactive effect, the Court struck down and severed a number of provisions contained in the arbitration agreement.)

In *Cara's Notion's, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566 (4th Cir. 1998), two individual plaintiffs owned a Hallmark store governed by an agreement with Hallmark Cards, Inc. that did not contain an arbitration provision.  Some years later, a corporation owned by the same two individuals (Cara's Notion's, Inc.) purchased another Hallmark store and entered into an agreement with Hallmark Cards, Inc. that did contain an arbitration agreement.  From that point on, the corporation operated both stores, although the initial agreement was not revised to so reflect that fact.  Subsequently, the corporation sued Hallmark Cards related to an issue pertaining to the first store.  Although the Court of Appeals reversed the District Court's denial of Hallmark's motion to compel arbitration, it noted that, "On remand, the district court should first determine whether Cara's Notions even has standing to assert the underlying claims before proceeding to the merits of the case."  *Id.* at 569.  The Court of Appeal's decision rested squarely on the fact that the plaintiff that brought the legal action was a party to only one agreement with Hallmark Cards – the agreement that did include an arbitration provision.  *Id.*

and do not arise in favour of the Claimants <u>based on the breaches of the Agreement</u>. The personal indebtedness that is the basis for the damages claim <u>all arose prior to the date of the Agreement [in Principle] and in my view the claims for those damages are not arbitrable under the Agreement</u>" (emphasis added)).  The Defendants claim that "nothing in the Canadian arbitrator's January 4, 2011 decision suggests that ABT's proposed employment-related claims fall outside of the scope of the arbitration provision" is simply false.

Finally, the Defendants argue that, in the event that the Court grants the Plaintiffs' Motion for Leave to Amend Complaint and the Plaintiffs claims are deemed to be outside of the scope of the arbitration clause, the Court should stay the entire proceeding because it has the discretion to do so.  Among other things, the Defendants argue that the claims subject to the arbitration provision are much larger than the claims outside of the arbitration provision.  However, there is no way for the Defendants to know that in advance of a trial, as this Court must make the determination of which, if any, claims are subject to the arbitration provision of the Agreement in Principle and what damages have been caused by each of the various pleaded causes of action.  (By way of illustration, the Canadian arbitrator deemed that "the bulk of" the damages claimed by the Claimant/Defendants were outside of the scope of arbitration.)

The Plaintiffs dispute the characterizations contained in the Defendants Memorandum in Opposition, including but not limited to which of the claims contained in the proposed Amended Complaint arise from the Agreement in Principle.

10

The Plaintiffs hereby renew all of their prior arguments with respect to the Defendants Motion for a Stay Pending Completion of the Arbitration Proceeding in response to the Defendants "Renewed" Motion to Stay.

For the foregoing reasons, this Court should grant the Plaintiffs' Motion for Leave to File Amended Complaint and Deny the Defendants' Motion for Stay Pending Arbitration.

Dated:  February 28, 2011                          Respectfully Submitted,


                                                   __/s/_____
                                                   Anne P. Hovis (D.C. Bar #412531)
                                                   General Counsel
                                                   NanoSolutions, LLC
                                                   1101 30th Street, NW
                                                   Suite 500
                                                   Washington, DC 20007
                                                   Phone:  (410) 952-0008
                                                   Fax:  (240) 465-2458
                                                   Jbhphlo@aol.com
                                                   *Counsel for NanoSolutions, LLC and*
                                                   *Aquiss Beverage Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of February, 2011, I served the foregoing

"Plaintiff's Motion for Leave to File Amended Complaint" upon the following through the

Court's Electronic Case Files system.

> Patrick J. Carome
> Laura Moranchek Hussain
> Wilmer Cutler Pickering Hale & Dore LLP
> 1875 Pennsylvania Avenue, NW
> Washington, DC 20006
> *Counsel for Rudy Prajza, Aqiss Canada, Ltd.,*
> *and 2221267 Ontario Ltd.*

Dated:  February 28, 2011                 ____/s/_____
                                          Anne P. Hovis (D.C. Bar #412531)
                                          General Counsel
                                          NanoSolutions, LLC
                                          1101 30th Street, NW
                                          Suite 500
                                          Washington, DC 20007
                                          Phone:  (410) 952-0008
                                          Fax:  (240) 465-2458
                                          Jbhphlo@aol.com
                                          *Counsel for NanoSolutions, LLC and*
                                          *Aquiss Beverage Technologies, Inc.*