**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
                               )
NANOSOLUTIONS, LLC, et al.     )
                               )
        Plaintiffs,            )
                               )   Civ. Action No. 10-1741 (EGS)
     v.                        )
                               )   ███████████
RUDY PRAJZA, et al.,           )
                               )
        Defendants.            )
                               )
_____)
```

<u>**MEMORANDUM OPINION**</u>

This action arises out of an alleged breach of an Agreement in Principle entered into by Nanosolutions, LLC ("Nano") and Aquiss Beverage Technologies, Inc. ("ABT") (collectively, "plaintiffs"), and Rudy Prajza ("Prajza"), Aqiss Canada, Ltd. ("ACL") and 2221267 Ontario, Ltd. ("Ontario") (collectively "defendants"). Pending before the Court are plaintiffs' motion for leave to amend their complaint and defendants' motion and renewed motion to stay the litigation pending arbitration. Upon consideration of the motions, responses and replies thereto, the applicable law, the entire record, and for reasons set forth below, the Court will **GRANT** plaintiffs' motion for leave to amend the complaint, **DENY AS MOOT** defendants' motion to stay, and **GRANT** defendants' renewed motion to stay the litigation in its entirety pending arbitration.

## I. BACKGROUND

Plaintiff Nano is a biotechnology company which develops "technology involving tissue-like nano-encapsulation delivery systems, providing instant delivery of payloads into the bloodstream." Pls.' Am. Compl. ("Am. Compl.") ¶ 19.[1] Plaintiff ABT, an affiliate of Nano, developed "the AQISS brand of vitality beverages" which provides "bio-availability of electrolytes and cell repair technology through nano-encapsulation." Am. Compl. ¶ 21. Defendant Rudy Prajza is a citizen of Canada. Defendants ACL and Ontario are two companies created by Prajza.

This case involves three contracts: a 2007 Employment Agreement between Prajza and ABT ("Employment Agreement"), a March 2010 Agreement between ABT and professional tennis player Andy Roddick, who is not a party to this case (the "Roddick Agreement"), and the June 2010 Agreement in Principle ("AIP") between all the parties in this case. The agreements will be discussed in turn.

In 2007, ABT and Prajza entered into an employment agreement ("Employment Agreement"), which provided for Prajza to become Chief Marketing Officer of ABT. Under the agreement, ABT would pay Prajza $150,000 per year plus benefits, expenses, and shares of stock, in exchange for which Prajza was to "promote the

---

[1] Unless otherwise stated, all facts are drawn from the Amended Complaint.

2

beverage brand [AQISS] and expand the existing product sales and distribution."  Am. Compl. ¶ 32.  According to plaintiffs, Prajza failed to perform the required functions of his position, resulting in significant losses to ABT.  In mid-2008 ABT ceased making payments to Prajza under the Employment Agreement.  The Employment Agreement contains no arbitration provision.  Am. Compl. Ex. D.

After Prajza and ABT parted ways in 2008, ABT negotiated an endorsement agreement with professional tennis player Andy Roddick.  ABT and Roddick executed the Roddick Agreement in March 2010, which grants to ABT the worldwide right to use Roddick's endorsement to promote ABT beverages, including AQISS.  In consideration for the right to use the athlete endorsement, the Roddick Agreement provides, among other things, for minimum annual royalties and the payment of a royalty on the sales of ABT beverages.  Am. Compl. ¶ 92.  The Roddick Agreement does not contain a mandatory arbitration provision.  Pls.' Opp'n to Motion to Stay, Declaration of James Hovis ("Hovis Decl.") ¶ 20.

Meanwhile, notwithstanding their troubled history, Prajza and ABT remained in contact.  Following protracted negotiations, the parties executed an Agreement in Principle ("AIP") for Prajza and two companies created by him - Defendants Ontario and ACL - to market and distribute AQISS products in Canada.  In the AIP, plaintiffs agreed to license Nano's technology to defendants and

convey other rights in connection with the development, production and marketing of AQISS in Canada. *See* Am. Compl. Ex. A., AIP. In exchange for these rights, ACL and Ontario agreed to pay royalties and other fees to plaintiffs and also agreed to provide other services, including a website. Pursuant to the AIP, ABT also agreed to sublicense to ACL its rights obtained under the Roddick Agreement, so as to permit ACL to use the endorsement of Andy Roddick in the marketing of AQISS. None of the defendants are party to the Roddick Agreement. However, as a condition of receiving the sublicense from ABT, defendant ACL agreed "to be bound by all of the terms and conditions of the Roddick Agreement and to take all necessary and reasonable actions to ensure ABT's compliance therewith pertaining to the marketing and selling" of AQISS in Canada. AIP ¶ 2(a).

The AIP does not create an employment relationship between Prajza and plaintiffs, nor does it reinstate Prajza's prior employment with ABT. It does, however, contain a provision referring to that history. Paragraph 10 of the AIP provides, in relevant part:

> In lieu of the payment to [plaintiffs] of any up-front licensing fees, scientific support payments, work progress payments . . . and minimum royalty payments during the first 12 months from the date first above written . . . Rudy Prajza agrees to forgive any and all accrued salary, expenses and other amounts payable to him by ABT [] through the date hereof . . .

AIP ¶ 10.

4

Paragraph 12(d) of the AIP contains a mandatory arbitration provision.  It provides:

> This Agreement and the legal relationships among the
> parties hereto shall be government by and construed in
> accordance with the substantive laws of the Province of
> Ontario, Canada without giving effect to the principals
> [sic] of conflicts of laws thereof.  Conflicts between
> parties shall be resolved through the Arbitration Act,
> Ontario, held in the City of Toronto.

AIP ¶ 12(d).

Plaintiffs and defendants executed the AIP on June 24, 2010.
Problems between the parties developed immediately.  Plaintiffs
allege that defendants breached the AIP by, among other things,
changing the price at which they promised to sell AQISS,
misrepresenting information about plaintiffs on ACL's website,
and failing to abide by the terms and conditions of the Roddick
Agreement.  On August 19, 2010 ABT sent a letter to ACL
terminating all of ACL's rights under the Roddick Agreement.  On
September 13, 2010, plaintiffs sent a letter to all defendants
terminating the AIP.  The next day, defendants ACL and Ontario
responded by delivering to the plaintiffs a Notice to Arbitrate
in Ontario, Canada.  Defs.' Motion to Stay, Declaration of
Jonathan Stainsby ("Stainsby Decl.") Ex. A. ("Notice to
Arbitrate").  The Notice to Arbitrate sought, *inter alia*, a
declaration that the AIP had not been terminated, an
interpretation of the AIP, a declaration regarding ACL's
obligations under the Roddick Agreement, specific performance of

the AIP, and damages for breach of contract.  Notice to Arbitrate
p. 2.

Plaintiffs informed the defendants that they would not
participate in the arbitration.  Stainsby Decl. Ex. B.  Instead,
a week later, on September 20, 2010, plaintiffs filed a one count
complaint alleging Fraud in the Inducement of the AIP in the
Superior Court for the District of Columbia.  Defendants removed
the case to this Court, citing "two independently sufficient
grounds for removal . . . the Federal Arbitration Act §§ 203 and
205 . . . [and] diversity[.]" Notice of Removal, Doc. No. 1 at 1-
2.  Following removal, defendants immediately moved to stay this
case pending completion of the arbitration initiated by ACL and
Ontario and "pending the outcome of any such claims as ABT may
seek to bring in arbitration under the [AIP]."  Defs.' Mem. in
Support of Motion to Stay at 9.

Shortly after the parties finished briefing Defendants'
Motion to Stay, an arbitrator appointed by the Ontario Supreme
Court of Justice issued his decision on the claims that ACL and
Ontario had asserted in arbitration.  Defs.' Notice of Decision,
Doc. No. 10.  Plaintiffs did not participate in the arbitration
proceedings.  Defendants argued that the arbitrator's decision
should not impact their motion for a stay in this Court, noting
that "the arbitrator's decision does not affect [defendants']
entitlement to a stay of these proceedings under the Federal

Arbitration Act until after ABT commences and completes an arbitration of its claim[s] . . . the claims asserted by ABT [in litigation] remain subject to the arbitration clause and this action must be stayed pending arbitration." Defs.' Notice of Decision at 2.

On January 31, 2011, plaintiffs filed a Motion for Leave to File an Amended Complaint.  The amended complaint contains eight counts.  Counts One and Two are common law claims of negligence, breach of contract, and conversion against Prajza only, and arise from Prajza's 2007 Employment Agreement with ABT.  Count Three alleges fraudulent inducement to enter into the AIP against all defendants.  Count Four alleges the defendants breached the AIP in several ways, including that ACL breached its obligations under the Roddick Agreement as incorporated into the AIP.  Count Five asserts that Prajza converted plaintiffs' property by registering the AQISS website in his own name.  Count Six claims Prajza made false statements and representations to plaintiffs in 2009 regarding his interest in again working for ABT.  Count Seven claims fraud in the arbitration proceeding.  Finally, Count Eight asserts defendants tortiously interfered in plaintiffs' business relationships by contacting one of Nano's owners and Andy Roddick regarding the parties' underlying disputes. Plaintiffs seek a declaratory judgment that the AIP is void, that the arbitrator lacks jurisdiction, and that the decision of the

Canadian arbitrator is not binding on plaintiffs, an injunction preventing defendants from using the Roddick endorsement, and damages of $330 million. Defendants have opposed the motion for leave to amend, and have renewed their motion to stay the proceedings pending arbitration. The motions are ripe for review by the Court.

## II.  STANDARD OF REVIEW

### A.    Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course within twenty-one days after serving it, or, if a pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or within twenty-one days after the defendant files a motion under Rule 12(b), (e) or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Once the time to amend a pleading as a matter of course elapses, a plaintiff may amend the complaint with leave of the Court.  Fed. R. 15(a)(2).  The Rule directs courts to "freely give" leave to amend a complaint "when justice so requires."  *Id.*  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Accordingly, courts should grant leave to amend "in the absence of undue delay, bad faith, undue

8

prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. U.S.*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman*, 371 U.S. at 182).

**B.   Stay of Proceedings Pending Arbitration**

When considering "a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions" under Federal Rule of Civil Procedure 56(a). *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003). "Thus, it is appropriate to grant a motion to stay proceedings when the pleadings and the evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Detoledano v. O'Connor*, 501 F. Supp. 2d 127, 137 (D.D.C. 2007) (citing Fed. R. Civ. P. 56.)  The party seeking a stay of proceedings bears the initial burden of demonstrating an absence of genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).  The non-moving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 324. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986). Summary judgment will be granted, therefore, if the plaintiffs fail to offer "evidence on which the jury could reasonably find for" the plaintiffs. *Id.* at 252.

## III. ANALYSIS

There are two motions pending before the Court. First, the plaintiffs move for leave to amend their complaint. Second, defendants have moved for a stay of all proceedings pending arbitration. The Court considers each motion in turn.

### A. Plaintiffs' Motion for Leave to Amend

Plaintiffs seek leave to file an amended complaint, which they have tendered to the Court. As discussed above, a party may amend its complaint once as a matter of course before being served with a responsive pleading. Fed. R. Civ. P. 15(a). Because a motion to stay is not a responsive pleading, *see* Fed. R. Civ. P. 7(a) (defining "pleadings"), and because this is plaintiffs' first attempt to amend the complaint, they are

entitled to amend their complaint without leave of the Court.[2]
*See Stender v. Cardwell*, No. O7-2503, 2009 WL 3158134, at *5 (D.
Colo. Sept. 28, 2009).  Accordingly, plaintiffs' motion to amend
is **GRANTED**.[3]

## B.   Defendants' Motion to Stay Proceedings Pending Arbitration

The defendants argue that all of plaintiffs' claims in the
Amended Complaint are covered by the parties' arbitration
agreement in the AIP, and accordingly, this case must be stayed
pending arbitration of those claims.  Plaintiffs assert two main
arguments in response.  First, plaintiffs assert that the
arbitration agreement is not valid, because the AIP was obtained
by fraud in the inducement.  Second, they argue that even if the
arbitration clause is valid, its scope is limited and does not
encompass many of the claims asserted in this litigation.[4]  The

---

[2]  Even if leave of the Court were required in order to
amend the complaint, the Court would grant it.  Defendants have
failed to show undue delay, bad faith, undue prejudice, repeated
failure to cure deficiencies, or futility.  Leave to amend would
therefore be appropriate pursuant to Federal Rule of Civil
Procedure 15(a)(2).

[3]  Because plaintiffs' motion to amend is granted,
defendants' initial motion to stay, filed before plaintiffs moved
to amend, is **DENIED AS MOOT.**

[4]  Plaintiffs also claim that defendants' request for a stay
is moot because the arbitrator has already rendered his decision
on defendants' claims; thus, "there is no longer any reason to
stay the instant proceeding."  Pls.' Response to Notice of
Arbitrator's Decision at 3.  This argument is without merit.  As
defendants point out, they seek a stay not only to arbitrate
their claims against plaintiffs, but also to preclude plaintiffs

Court will first set forth the governing law, and then will explore plaintiffs' claims in turn.

### i. **Applicable Law**

Defendants invoke the Convention on the Recognition and Enforcement of Foreign Arbitral Awards [1970] 21 U.S.T. 2517, 330 U.N.T.S. 38, *reprinted at* 9 U.S.C. § 201 ("New York Convention") to request a stay in this action pending arbitration of plaintiffs' claims.  The New York Convention governs enforcement of an arbitration clause contained within an international commercial contract such as the AIP.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 616 (1985).  The New York Convention is implemented in the United States through the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, which provides "the [New York Convention] shall be enforced in United States courts in accordance with this chapter."

For an arbitration provision to be enforceable under the New York Convention, "(1) there must be a written agreement; (2) it

___

from litigating *their* claims against defendants directly in court.  See Defs.' Reply to Pls.' Response to Notice of Arbitrator's Decision.  Section 3 of the Federal Arbitration Act permits defendant to do exactly that.  As this Circuit has held, "Section 3 empowers a district court only to stay an action, leaving to the claimant the choice of arbitrating the claims or abandoning them."  *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 902 (D.C. Cir. 1998); *see also Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389 (7th Cir. 1995) ("a defendant who wants arbitration is often content with a stay, since that will stymie the plaintiff's effort to obtain relief unless he agrees to arbitrate.").  Accordingly, defendants' motion for a stay remains properly before the Court.

must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). The parties do not dispute that the New York Convention applies to the AIP's arbitration agreement.

As noted above, international arbitrations subject to the New York Convention are governed by Chapter Two of the FAA. Chapter One of the FAA applies, however, "to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208; see *Khan v. Parsons Global Services, Ltd.*, 521 F.3d 421, 425 n.1 (D.C. Cir. 2008).

The FAA provides that an agreement to arbitrate in any "contract evidencing a transaction involving commerce" is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, arbitration agreements may be invalidated under Section 2 of the FAA on the basis of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West,*

*Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).[5]

Once a court determines that an arbitration agreement is valid - *i.e.* that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration. "In determining the scope of arbitability, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2866 (2010) (Sotomayor, J., concurring/dissenting) (quoting

---

[5]     The Supreme Court has recognized that in some circumstances, state (or international) contract law applies in determining whether there is an enforceable agreement to arbitrate. In cases arising under the New York Convention, however, there are "compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable." *Smith/Enron*, 198 F.3d at 96; see also *Certain Underwrites at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 578-580 (7th Cir. 2007); *Intergen N.V. v. Grina*, 344 F.3d 134, 143-44 (1st Cir. 2003); *Khan v. Parsons Global Services, Ltd*, 480 F. Supp. 2d 327, 337-38 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008). This is particularly true where, as here, neither party argues that any other law applies, and indeed, both parties exclusively cite federal law. *See Smith/Enron*, 198 F.3d at 96 ("while the language [of the agreement] might justify looking to Texas law . . . , neither party argued that it applied. Thus, we will apply the body of federal law under the FAA."); *see also Intergen N.V.* 344 F.3d at 143, n.4.

*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986)); *see also Wolff v. Westwood Management, LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009)("the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.")(quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

### ii.    The Arbitration Agreement is Enforceable

As a threshold matter, the Court must determine whether the arbitration agreement is valid and enforceable under Section 2 of the FAA.  Plaintiffs contend that the arbitration agreement is invalid because defendants fraudulently induced them into agreeing to the AIP.  See Am. Compl. Count 3, ¶¶ 141-149. Defendants counter that the plaintiffs have not alleged fraud in the inducement of the arbitration clause; rather, plaintiffs claim fraud in the inducement of the AIP as a whole.  Defs.' Reply in Support of Motion to Stay at 2-4.  Defendants argue that this court is not permitted to adjudicate claims of fraud in the inducement of the contract generally; instead, such claims must be considered by an arbitrator.  Defs.' Mem. in Support of Motion to Stay at 7.  This Court agrees with the defendants.

In *Buckeye Check Cashing, Inc. v. Cardegena*, 546 U.S. 440 (2006), the Supreme Court noted that "[c]hallenges to the validity of arbitration agreements . . . can be divided into two types." *Id.* at 444. The first type, which "challenges specifically the validity of the agreement to arbitrate," may be adjudicated by this Court. *Id*. However, the FAA prohibits a district court from considering the second type, which challenges the contract as a whole. *Id.* at 444-45*; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the 'making' of the agreement to arbitrate - the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.")

Here, the plaintiffs allege they were fraudulently induced into entering into an agreement to do business with Prajza, who misrepresented the composition of his companies, his connections, and his abilities. Plaintiffs claim that "such false representations included, but were not limited to," representations that Prajza "had contacts and leads in a number of foreign countries . . . who would be excellent candidates to license the plaintiff's technology and distribute AQISS beverages in such countries," that Prajza would "make such introductions

and promote such licensing and distribution efforts in the event that the parties executed an agreement acceptable to Mr. Prajza," and that "a list of prominent businessmen were part of the Defendant companies." Pls.' Opp'n to Motion to Stay at 14; Am. Compl. ¶¶ 75, 77. As defendants point out, plaintiffs do not allege any "fraud in the inducement of the arbitration clause specifically. Rather, each and every allegedly false statement that [plaintiffs] identify as a basis for the alleged 'fraudulent inducement' relates to the parties' plans and expectations for their business relationship, and not at all to the A[IP]'s dispute-resolution mechanism." Defs.' Reply at 2-3.

The Court agrees with defendants that plaintiffs have not alleged fraud in the inducement of the arbitration provision either in their original complaint or their amended complaint. Significantly, Count Three of the Amended Complaint - Fraud in the Inducement - contains no allegation that plaintiffs were fraudulently induced to specifically enter into the arbitration clause. Moreover, plaintiffs' letter terminating the AIP makes no reference to the arbitration clause. Rather, plaintiffs claim that the entire "Agreement in Principle was obtained by fraud in the inducement." Hovis Decl. Ex. B (Notice of Termination).[6]

---

[6] The Court has considered plaintiffs' assertion that they have long had "a policy against entering agreements containing arbitration provisions," but, because of Prajza's various misrepresentations, were fraudulently induced "to agree to terms to which the [plaintiffs] would not otherwise agree (including .

Accordingly, the Court finds that plaintiff is challenging the entire AIP, and not specifically the arbitration clause. This issue must be resolved by an arbitrator, and not by this Court, in accordance with *Prima Paint* and *Buckeye*. The Court concludes, therefore, that plaintiff's attempt to invalidate the arbitration agreement cannot be sustained, and finds the agreement to arbitrate is enforceable under Section 2 of the F.A.A.[7]

### iii. The Arbitration Agreement Encompasses All of Plaintiffs' Claims in the Amended Complaint

Plaintiffs argue that even if the arbitration clause is valid and binds them to arbitrate certain claims under the AIP, it does not encompass all of the claims asserted in their Amended Complaint. Defendants counter that all of plaintiffs' claims fall within the scope of the parties' broad arbitration agreement, and thus the entire litigation must be stayed. For the reasons set forth above, the Court concludes that Count Three of the Amended Complaint must be stayed. The Court will examine the remaining counts in plaintiffs' Amended Complaint in turn.

---

. . the arbitration provision . . . .)." Pls.' Opp'n to Motion to Stay at 13-14; Hovis Decl. at ¶ 12; Am. Compl. ¶ 3. Given the absence of any factual claim or additional argument that the arbitration agreement itself was fraudulently induced, however, the Court is not persuaded that the plaintiffs have indeed challenged the arbitration provision itself, as opposed to the AIP as a whole.

[7] Although the enforceability of the arbitration provision is a threshold issue in resolving the entire motion to stay, plaintiffs specifically raise it in Count Three. Accordingly, the Court will **STAY** Count Three of the Amended Complaint.

## a. Claims Arising from the Alleged Breach of the AIP

Counts Four, Seven and Eight of the Amended Complaint arise from or relate to the AIP. The Court will address Counts Seven and Eight briefly, then turn to Count Four.

Count Seven alleges that defendant Prajza committed fraud in the Canadian arbitration proceeding. Am. Compl. ¶¶ 169-175. Count Eight alleges defendants tortiously interfered with plaintiffs' business opportunities by contacting an owner/shareholder of Nano and Andy Roddick's agent in order to "damage the [plaintiffs'] relationships" with these two individuals and thus undermine plaintiffs' business. Am. Compl. ¶¶ 176-185. Defendants argue that these allegations must be stayed pending arbitration. However, in their opposition, plaintiffs fail to respond to the defendants' arguments regarding Counts Seven and Eight. It is therefore proper to treat defendants' arguments as conceded. *See Sewell v. Chao*, 532 F. Supp. 2d 126, 135 n.5 (D.D.C. 2008), *aff'd* Slip Copy, No. 08-5079, 2009 WL 585660 (D.C. Cir. Feb. 25, 2009); *see also Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 943 (D.C. Cir. 2009).[8]

---

[8] Even if plaintiffs had responded to defendants' arguments, which they did not, the Court finds it unlikely that plaintiffs would prevail. As set forth above, the AIP provides for mandatory arbitration of "conflicts between parties" to the AIP and contains no language limiting the subject matter of the conflicts to be arbitrated. AIP ¶ 12. Plaintiffs' claims in Counts Seven and Eight clearly fall within the scope of this extremely broad arbitration clause. Specifically, plaintiffs argue that the defendants committed fraud in the arbitration

The plaintiffs do, however, respond to defendants' claim that certain of the breaches alleged in Count Four - specifically, the breaches which arise from defendant ACL's alleged obligations under the Roddick Agreement - fall within the parties' arbitration agreement in the AIP.[9]  It is to this question that the Court now turns.

As set forth in Section I supra, the AIP contains an arbitration agreement which governs, without limitation, "disputes between parties" to the AIP.  AIP ¶ 12(d).  The AIP also contains a provision regarding ABT's agreement to sublicense to ACL its rights obtained under the Roddick Agreement in order

---

proceedings agreed to by the parties in the AIP, and interfered wtih relationships arising out of the parties' business relationship, which was governed by the AIP.  Because both claims arise out of the AIP, and have their genesis in it, it is highly likely that the Court would find these claims "relate to the subject matter of the arbitration clause" and therefore must be resolved by an arbitrator.  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993).

[9]  Plaintiffs fail to respond defendants' motion to stay the remaining claims contained in Count Four, which allege breach of the AIP in ways unrelated to the Roddick Agreement.  Am. Compl. ¶¶ 150-154.  Therefore, it is also proper to treat defendants' arguments regarding these portions of Count Four as conceded.  As with Counts Seven and Eight, however, the Court finds that even if plaintiffs had responded to defendants' arguments they would not prevail.  Plaintiffs argue in Count Four that the defendants breached their contractual obligations under the AIP to, *inter alia*, maintain ABT's website and submit required monthly reports. These claims clearly arise out of the AIP; indeed, they are expressly created by it.  The Court would therefore also find that these claims relate to the subject matter of the AIP's arbitration clause, and accordingly must be stayed by this Court pending resolution by an arbitrator.

to permit ACL to use the endorsement of Andy Roddick in the marketing of AQISS.  That provision provides:

> ABT hereby grants a sublicense to [ACL] of its rights under that certain agreement dated March 27, 2010, by and between ABT and Andy R., Inc. (the "Roddick Agreement") to use the Athlete Endorsement (as defined in paragraph 1 of the Roddick Agreement) in [Canada], in accordance with the terms of the Roddick Agreement, provided that, by executing [the AIP], [ACL] agrees to be bound by all of the terms and conditions of the Roddick Agreement and to take all necessary and reasonable actions to insure ABT's compliance herewith pertaining to the marketing and selling of the [AQISS beverage] in [Canada].

AIP ¶ 2(a).  The Roddick Agreement does not contain a mandatory arbitration provision; rather, it provides that "the legal relationships among the parties hereto" shall be governed by Maryland law, and that "any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity of it, may, upon mutual agreement of the parties hereto, be finally settled by arbitration[.]" Roddick Agreement ¶ 16.

Plaintiffs argue that by agreeing to be bound to "all the terms and conditions of the Roddick Agreement," *see* AIP ¶ 2(a), ACL is bound to the Roddick Agreement's dispute resolution provision and *not* to the AIP's arbitration clause, to resolve disputes with plaintiffs which relate to the Roddick Agreement. Defendants respond that the only contract the parties all signed is the AIP, and therefore its dispute resolution process controls.  Defs.' Supplemental Mem. In Support of Motion to Stay,

p. 3-4, 6.  After careful consideration, and for the following
reasons, the Court finds plaintiffs' claims regarding ACL's
alleged obligations under the Roddick Agreement are arbitrable
under the AIP's arbitration clause.

As discussed throughout, the arbitration clause in the AIP
is extremely broad.  It provides that "conflicts between parties
shall be resolved through the Arbitration Act, Ontario, held in
the city of Toronto" and contains no limits on the subject matter
of the conflicts to be arbitrated.  Standing alone, the
arbitration provision clearly encompasses the parties' conflict
about the sublicensing of Andy Roddick's endorsement of the AQISS
beverage, particularly since the sublicense was granted in the
AIP.  In determining the parties' intent, however, the Court
"looks to all terms of the parties' agreement bearing on
arbitration.  Even though the words of the agreement's
arbitration provision may be broad, its scope may be limited by
language elsewhere in the agreement clearly and unambiguously
negating or limiting it with respect to a matter in dispute."
*Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing
Home and Allied Services Union*, 788 F.2d 894, 898 (2d Cir.
1986)(citations omitted); *see also AT&T Technologies*, 475 U.S. at
651-52 (on remand, lower courts must construe entire collective
bargaining agreement to determine whether a particular grievance
was subject to arbitration); *Feingold, Alexander & Associates,*

*Inc. v. Setty & Associates, Ltd.*, 81 F.3d 206, 207-09 (D.C. Cir. 1996) (reading contract as a whole to determine scope of arbitration clause).

Plaintiffs urge the Court to read the arbitration clause together with paragraph 2(a) of the AIP, which relates to the Roddick Agreement, as well as the dispute provision of the Roddick Agreement. Neither of these provisions, however, "clearly or unambiguously [] negate[s]" the AIP's arbitration clause with respect to conflicts regarding the ACL's obligation under the Roddick Agreement. *Woodcrest*, 788 F.2d at 898.

Section 2(a) contains ACL's agreement to be bound to the Roddick Agreement as it relates to "the marketing and selling of the Finished Products [AQISS beverages] in the Territory [Canada]." AIP ¶ 2(a). Given the limited scope of ACL's sub-license of the Roddick endorsement, its agreement to comply with "all of the terms and conditions" of the Roddick Agreement cannot be logically read to mean that *every* term and condition of the Roddick Agreement creates an enforceable obligation for ACL. ■■

23

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Again, these
provisions create no obligation for ACL. Were the Court to read
paragraph 2(a) as plaintiffs suggest - creating obligations for
ACL under each and every provision of the Roddick Agreement -
these portions of the Roddick Agreement would be rendered
meaningless - a result forbidden by ordinary principles of
contract interpretation. *See, e.g., Booker v. Robert Half
Intern., Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (citing
Restatement (Second) of Contracts § 203(a) (1981)).

Similarly, the Court finds that the dispute resolution
provision in the Roddick Agreement creates no obligation for ACL.
That provision provides for resolution of disputes among the
"*parties*" to the Roddick Agreement. Roddick Agreement at ¶ 16
(emphasis added). But, as plaintiffs admit, ACL is not a party
to the Roddick Agreement. Am. Compl. ¶ 91. On the other hand,
ACL is a party to the AIP, which contains a mandatory arbitration
provision which covers, without limitation, conflicts between it
and ABT. If, as plaintiffs urge, the Court were to hold that the
dispute resolution provision of the Roddick Agreement allows
plaintiffs to avoid arbitration with ACL, then that clause could
not be squared with AIP's mandatory arbitration clause covering
all conflicts with ACL. Such an outcome would not comport with
the Court's duty to harmonize all provisions of a contract and to
reconcile them if possible. *See, e.g., Papago Tribal Util. Auth.*

*v. Fed. Energy Regulatory Comm'n*, 610 F.2d 914, 929 (D.C. Cir. 1979).

Instead, to reconcile the clauses, the Court reads the plain language of Roddick Agreement's dispute resolution to apply only to parties to that agreement. Accordingly, if ABT has a dispute with Roddick, the dispute resolution provisions of that agreement apply. If, however, the parties to the AIP have a conflict, the AIP's dispute resolution provision applies. This construction of the agreements gives meaning to both provisions and nullifies neither.

Accordingly, the Court concludes that the AIP and the Roddick Agreement are "susceptible of an interpretation" that ABT and ACL's dispute regarding the Roddick Agreement is covered by the AIP's arbitration clause. *AT&T Technologies,* 475 U.S. at 650. This portion of Count Four is therefore **STAYED** pending arbitration.[10]

---

[10] Plaintiffs assert a variety of common law contract doctrines - incorporation by reference, estoppel, and third party beneficiary - in support of their claims that ACL is bound by the dispute resolution provision of the Roddick Agreement. Pls.' Mem. In Further Support of Opp'n to Motion to Stay at 4-7. However, plaintiffs admit that every authority they cite in support of these theories arises in the inverse of the situation here: *i.e.,* courts use these contract law principles to <u>bind</u> an entity to a mandatory arbitration provision in a contract it did not sign. If, as plaintiffs urge, the Court applied these principles in this case, it would permit a party to <u>escape</u> a mandatory arbitration provision contained in a contract it signed. This result would be irreconcilable with the strong federal policy in favor of arbitration and this Court's duty to resolve any doubts concerning the scope of an arbitration clause

### b. Claims Arising from Rudy Prajza's Former Employment with ABT

Counts One, Two, Five and Six of the Amended Complaint arise from Prajza's prior employment relationship with ABT. Specifically, plaintiffs assert that Prajza breached his employment contract with ABT, committed negligence in his role as ABT's Chief Marketing Officer, converted ABT's property by registering a website for ABT in his own name while employed by ABT, and fraudulently induced ABT to obtain an H1-B visa for him by misrepresenting that he would return to work for ABT. Am. Compl. ¶¶ 131-140; 155-168.

Plaintiffs argue that their employment-related claims against Prajza are not subject to the AIP's arbitration clause because they arose before the parties entered into the AIP. Plaintiffs also argue that at least some of these claims are governed by Prajza's and ABT's 2007 Employment Agreement, which does not contain an arbitration clause.[11]  Pls.' Opp'n to Defs.'

_____

in favor of arbitration.  Accordingly, the Court finds plaintiffs' authority wholly inapplicable to this case.

[11]    Plaintiffs make the additional argument that the Canadian arbitrator's decision requires this Court to hear their employment-related claims.  In his Reasons for Decision, the arbitrator declined to rule on Prajza's "personal" damage claims against plaintiffs arising out of his prior employment relationship with ABT.  *See* Reasons for Decision, Doc. 10-1 at 4. Plaintiffs assert that this Court must resolve their claims regarding Prajza personally because the Canadian arbitrator refused to resolve Prajza's similar claims against plaintiffs. See *Id.* at 3, 4, 12.

The Court disagrees.  Contrary to plaintiffs' claim, it is

Renewed Motion to Stay at 6-9.  Defendants counter that the AIP's

arbitration clause governs all "conflicts between parties," and,

as Prajza and ABT are indisputably parties to the AIP, ABT's

claims against Prajza are subject to the parties' agreement to

arbitrate, even if the events underlying the claims predate

execution of the AIP, and even if they arose under the 2007

Employment Agreement.  Defs.' Renewed Motion to Stay at 6.  Upon

careful consideration, the Court agrees with defendants that

these claims are covered by the parties' agreement to arbitrate.

Several circuits have held that a broad arbitration clause

may encompass claims between the parties that arise out of their

---

not clear that the arbitrator decided that Prajza's employment-
related claims fall outside the scope of the parties' agreement
to arbitrate.  As the arbitrator noted, Prajza was not a party to
the arbitration; the only claimants were ACL and Ontario.  Defs'
Motion to Stay, Exhibit C, Notice of Application to Arbitrate.
In declining to award employment-related damages allegedly
incurred by Prajza to ACL and Ontario, the arbitrator noted that
such claims "are personal to Mr. Prajza and do not arise in
favour of the Claimants[.]"  Notice of Decision at 4.
Accordingly, it appears that the arbitrator did not have the
opportunity to squarely consider whether such claims are within
the scope of the parties' arbitration agreement.  In contrast,
the issue is squarely before this Court.  As the Supreme Court
has repeatedly held, it is the role of the courts to determine
what claims are arbitrable under the parties' agreement to
arbitrate unless the parties have clearly delegated that function
to an arbitrator.  *See, e.g., AT&T Technologies*, 475 U.S. at 649
(courts, not arbitrators, should determine the scope of an
arbitration agreement "unless the parties clearly and
unmistakably provided otherwise.").  Nothing in the AIP suggests
that the parties delegated the question of arbitrability to the
arbitrator, and none of the parties argue that they did so.
Accordingly, the Court concludes that it has the authority to
determine whether these claims are arbitrable.

ongoing relationship, even if those claims predate the agreement to arbitrate and even if the claims are not related to the subject matter of the agreement containing the arbitration clause.[12] *See Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972)(an agreement to arbitrate "any controversy between . . . members" included conflicts that accrued before the members entered into the agreement, even if they were unrelated to the agreement). *See also Zink v. Merrill Lynch Pierce Fenner & Smith*, 13 F.3d 330, 332 (10th Cir. 1993) (arbitration clause stating "any controversy between [the parties] arising out of [plaintiff's] business or this agreement" was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute at issue occurred prior to the execution of the agreement."); *Belke v. Merril Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982) *abrogated on other grounds, Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ("By its own terms the contract between the parties covers not only disputes arising out of the agreement, but . . . includes "any controversy between us arising out of your business." An arbitration clause covering disputes arising out of the contract *or* business between the parties evinces a clear intent to cover more than just those matters set forth in the

---

[12] The D.C. Circuit does not appear to have directly addressed this situation.

contract.") (emphasis in original).

Indeed, courts have applied broad arbitration clauses to include disputes arising under earlier agreements between the parties that did not themselves provide for mandatory arbitration. In *Levin v. Alms & Associates*, 634 F.3d 260,(4th Cir. 2011), the Fourth Circuit determined that an arbitration clause which provided that "[a]ny dispute shall be submitted to binding arbitration" was "broad enough to encompass *all* agreements and *any* disputes," including disputes arising from earlier agreements with no arbitration provisions. *Id.* at 267 (emphasis in original). The *Levin* Court reasoned that the "heavy presumption . . . in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." *Id.* at 266-67; *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006) (agreement to arbitrate "any claim or dispute relating to or arising out of this agreement or the services provided" applied retroactively to claims arising from prior service contracts that did not contain arbitration provision); *Cash Converters USA, Inc. v. Burns*, No. 99-C-146, 1999 WL 98345, at *9 (N.D. Ill. Feb. 19, 1999) (arbitration clause covering all claims arising out of the agreement as well as claims related to the parties' "relationship" encompasses prior agreements with no arbitration provisions).

In this case, like those cited above, the arbitration

provision in the AIP is extremely broad – it requires arbitration of "conflicts between parties" and contains no language limiting the subject matter or temporal scope of those conflicts.  AIP ¶ 12(d).  Moreover, the allegations in the Amended Complaint make clear that ABT and Prajza have had a relationship since at least 2007, spanning the time period during which the incidents alleged in Counts 1, 2, 5 and 6 occurred.  See, e.g., Am. Compl. ¶¶ 30-35, 43-48, 59-65, 71-73, 74-106.  Of particular importance in this case, the AIP itself contains language recognizing that Prajza was once employed by ABT and relating back to that relationship.  The AIP does not create or renew an employment relationship between Prajza and plaintiffs, but nevertheless, Paragraph 10 of the AIP provides:

> In lieu of the payment to [plaintiffs] of any up-front licensing fees, scientific support payments, work progress payments . . . and minimum royalty payments during the first 12 months from the [AIP's effective date] . . . Rudy Prajza agrees to forgive any and all accrued salary, expenses and other amounts payable to him by ABT and/or [Nano] through the date hereof . . .

AIP ¶ 10.  This language strongly indicates that the parties accounted for and attempted to resolve issues relating to Prajza's previous employment with ABT *in* the AIP.  At the same time, they agreed to an extremely broad arbitration clause covering "conflicts between parties" without limitation.  Under these circumstances, and bearing in mind that this Court is required to accord a strong presumption in favor of arbitration,

the Court concludes that the arbitration clause in the AIP encompasses plaintiffs' claims arising out of Prajza's earlier employment relationship with ABT.

Plaintiffs cite to several cases in which courts refuse to give retroactive effect to arbitration clauses. After careful review, the Court finds these cases unpersuasive as applied to the facts of this case. Nearly all of the cases relied upon by plaintiffs contain arbitration clauses which are much narrower than the arbitration agreement in the AIP, and explicitly restrict arbitration to claims arising under the contract. See, e.g., *George Washington University v. Scott*, 711 A.2d 1257, 1259 (D.C. 1988) (parties agreed to arbitrate "any claim . . . under this contract"); *Security Watch Inc. v. Sentinel Systems*, 176 F.3d 369, 372 (6th Cir. 1999) (arbitration required "in connection with all disputes . . . arising out of or relating to Products furnished pursuant to this Agreement"); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local 1*, 903 F.2d 924, 927 (2d Cir. 1990) (mandatory arbitration of all claims "arising under this agreement and during its term").

Plaintiffs cite only a single case - *Hendrick v. Brown & Root* - in which the court found a broad arbitration clause between the parties did not cover claims predating the arbitration agreement. 50 F. Supp. 2d 527 (E.D. Va. 1999). The Court finds *Hendrick* inapposite to the facts of this case. In

*Hendrick*, the contract containing the arbitration provision was not negotiated at all; rather, it was presented as a take it or leave it agreement between a sophisticated multinational corporation on the one hand and a single, unsophisticated employee on the other. *Id.* at 529-30. In contrast, the AIP in this case was the product of protracted negotiation between several equally sophisticated parties. Moreover, the plaintiff in *Hendrick* did not know of the allegedly unlawful prior conduct by his employer until after he had signed the contract containing the arbitration clause; accordingly, he never had the opportunity to pursue his claims in litigation before signing the later agreement. *Id.* at 531. In this case, on the other hand, ABT was clearly unhappy with Prajza's work when it stopped paying him in 2008, a full two years before executing the AIP. Accordingly, plaintiffs had ample opportunity to litigate most of their employment-related claims against Prajza *before* negotiating a subsequent agreement agreeing to arbitrate any and all claims between them. *Cf. Davis v. Magnolia*, 640 F. Supp. 2d 38 (D.D.C. 2009) (arbitration provision not retroactive where contract was not product of negotiation between equally sophisticated parties and where plaintiff had already begun litigating earlier claim before signing contract containing arbitration provision); *Shelton v. Ritz Carlton Hotel Co.*, 550 F. Supp. 2d 74 (D.D.C. 2008) (arbitration provision not retroactive where contract was

32

not product of negotiation between equally sophisticated parties and where claim occurred one month before plaintiff signed arbitration provision, therefore she had no chance to litigate it).

Accordingly, given the broad scope of the AIP's arbitration clause, and in light of the parties' clearly expressed intent to resolve Prajza's old employment disputes within the body of the AIP, the Court **GRANTS** defendants' motion to stay Counts One, Two, Five and Six of the Amended Complaint pending arbitration of plaintiffs' claims.

## IV.  CONCLUSION

For the reasons stated above, plaintiffs' motion to amend the complaint is **GRANTED,** defendants' first motion to stay is **DENIED AS MOOT,** defendants' renewed motion to stay this case in its entirety pending arbitration is **GRANTED.**  A separate order accompanies this memorandum opinion.  Because this Memorandum Opinion discusses material which the parties filed under seal in accordance with the [19] Order entered by the Court in March 2011, it is initially being filed under seal.  An appropriate Order resolving the motions and directing the parties to submit a redacted opinion for public viewing accompanies this Memorandum Opinion.  Consistent with this Order, the parties shall submit a

sealed filing with the Court including their joint proposed
redactions by no later than June 16, 2011.

**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **June 2, 2011**